1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL H. MCGINLEY III, and
MARCIA J. MCGINLEY, husband and
wife,

                              Plaintiffs,

     v.

AMERICAN HOME MORTGAGE
SERVICING, INC, AMERICAN
BROKER CONDUIT, APEX
MORTGAGE SERVICE, FIDELITY
NATIONAL FINANCIAL,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., and
DOES I - VII,

                              Defendants.

No. 2:10-cv-01157 RJB

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT
AMERICAN HOME MORTGAGE
SERVICING, INC.'S MOTION TO
DISMISS

        This matter comes before the Court on Defendant American Home Mortgage Servicing,

Inc.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 11.  The

Court has considered the pleadings filed in support of and in opposition to the motion and the

remainder of the file herein.

I.  **FACTUAL AND PROCEDURAL HISTORY**

        Plaintiffs are husband and wife and reside in Jefferson County, Washington.  Dkt. 3-2 at

53.  Sometime in 2004, Plaintiffs obtained a mortgage for a home located in Port Ludlow,

Washington.  *Id.*  In early November 2006, Plaintiffs contacted Defendant mortgage broker Apex

Mortgage Service, LLC ("Apex") through the internet in response to an online advertisement.

ORDER ON MOTION TO DISMISS - 1

Dkt. 3-2 at 53-54.  Plaintiffs claim that Defendant Apex "assisted Plaintiffs in applying for a refinance loan offered by Defendant Lender (American Broker Conduit)."  Dkt. 3-2, at 54.

Plaintiffs claim that they were "interested in obtaining a fixed rate loan" without prepayment penalties.  Dkt. 3-2, at 55.  Plaintiffs contend that Defendant Apex led them to believe that the loan for which they applied had those terms.  *Id*.  Plaintiffs allege that they "ended up instead with a Negative Amortization Adjustable Rate mortgage."  *Id*.  Plaintiffs closed on their refinance loan sometime in November 2006.  *Id*.  Plaintiffs contend that after this refinance loan was closed, "Defendant Lender [American Broker Conduit] assigned its rights and obligations to other financial institutions, namely American Home Mortgage Servicing, Inc. [AHMSI]…and to Mortgage Electronic Registration Systems, Inc. [MERS]."  Dkt. 3-2, at 54.

On January 16, 2007, a Deed of Trust was filed in the office of the Auditor of Jefferson County, WA.  Dkt. 3-2, at 42-50.  This Deed of Trust identifies Plaintiffs as the borrowers, the lender as American Brokers Conduit, and Trustee as "Search 2 Close."  Dkt. 3-2, at 41-42.  MERS is defined in the deed as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."  Dkt. 3-2, at 42.  MERS is also designated as a "beneficiary" in the Deed of Trust.  *Id*.

On July 7, 2009, Plaintiffs, through counsel, sent a notice of rescission to "American Home Mortgage" and American Broker Conduit declaring their loan to be rescinded.  Dkt. 3-2, at 4.  On August 3, 2009, AHMSI sent Plaintiffs' counsel a letter rejecting Plaintiffs' attempt to rescind their mortgage.  Dkt. 3-2, at 33.  In its letter, AHMSI states that "AHMSI is not affiliated or related to the mortgage lender or mortgage broker in the origination of the loan.  AHMSI plays a limited role in servicing mortgage loans and cannot pass on the validity of these origination related claims."  *Id*.

ORDER ON MOTION TO DISMISS - 2

On October 29, 2009, Plaintiffs filed a complaint in Jefferson County Superior Court against Defendants "American Home Mortgage," American Broker Conduit, Apex Mortgage Service, Fidelity National Financial, and Does I-VII.  Dkt 3-1 at 2.

On December 29, 2009, a Notice of Trustee's Sale was sent to Plaintiffs indicating a trustee's sale set for April 2, 2010.  Dkt. 3-2, at 15; Dkt. 3-2, at 35-38.

On March 18, 2010, Plaintiffs filed a motion for a temporary restraining order in Jefferson County Superior Court.  Dkt. 3-1, at 21-36.  In support of this motion, Plaintiffs filed several declarations and numerous exhibits, including: (1) a notice of rescission sent by Plaintiffs dated July 7, 2009; (2) a letter from AHMSI rejecting this attempt to rescind dated August 3, 2009; (3) a second letter from AHMSI dated February 2, 2010; (4) a Truth-in-Lending disclosure statement apparently signed by Mr. McGinley on November 9, 2006; (5) a Uniform Residential Loan Application apparently signed by Mr. McGinley on November 9, 2006; (6) an unsigned Uniform Residential Loan Application apparently dated November 14, 2006; (7) a good faith estimate apparently signed by Mr. McGinley on November 9, 2006; (8) a HUD-1A settlement statement indicating a settlement date of November 21, 2006; and (9) an attachment to a letter dated August 14, 2009 from AHMSI to Plaintiffs' counsel entitled "Notice of Right to Cancel" apparently signed by both Plaintiffs on November 21, 2006.  Dkt. 3-2.

On July 1, 2010, Plaintiffs filed an amended complaint, naming as Defendants AHMSI, American Broker Conduit, Apex Mortgage Service, Fidelity National Financial, Mortgage Electronic Registration Systems, Inc., and Does I-VIII.  Dkt. 3-2 at 51.  In their amended complaint, Plaintiffs allege seven causes of action with regard to Defendant AHMSI: (1) violations under the Truth in Lending Act (TILA), 15 U.S.C. § 1635, allowing rescission and monetary damages; (2) violations of the Real Estate Settlement Procedures Act (RESPA), 12

U.S.C. § 2601 *et seq*; (3) violations of the Unfair Business Practices Act, R.C.W. 19.86 *et seq*;
(4) breaches of fiduciary duties; (5) fraud; (6) intentional infliction of emotional distress; and (7)
unjust enrichment.  Dkt 3-2 at 57-62.  Plaintiffs served Defendant AHMSI with the amended
complaint on July 1, 2010.  Dkt 3-2 at 69.

On July 16, 2010, Defendant AHMSI removed the case to federal court.  Dkt. 1.  On
August 19, 2010, Defendant AHMSI filed this motion to dismiss pursuant to Rule 12(b)(6) of the
Federal Rules of Civil Procedure.  Dkt. 11.  Defendant AHMSI argues that Plaintiffs' complaint
fails to assert any right of relief as to AHMSI.  *Id.*  Defendant AHMSI argues, in summary, that
Plaintiffs either do not assert sufficient facts to support any of their claims or that the causes of
action asserted do not give Plaintiffs any legally cognizable claims.  *Id.*  On September 29, 2010,
Plaintiffs filed a response in opposition.  Dkt. 13.  On October 1, 2010, Defendants filed a reply.
Dkt. 14.

## II.    DISCUSSION

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short
and plain statement of the claim showing that the pleader is entitled to relief."  Under Fed. R.
Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can
be granted."  Dismissal of a complaint may be based on either the lack of a cognizable legal
theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v.
Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  While a complaint attacked by a
Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation
to provide the grounds of his entitlement to relief requires more than labels and conclusions, and
a formulaic recitation of the elements of a cause of action will not do.  *Bell Atlantic Corp. v.
Twombly*, 550 U.S. 544, 555 (2007) (*internal citations omitted*).

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Twombly*, at 570).  A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  First, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*, at 1950.  Secondly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009).

If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff should be afforded the opportunity to amend the complaint before dismissal.  *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). If the claim is not based on a proper legal theory, the claim should be dismissed.  *Id.*  "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Service,* 572 F.3d 962, 972 (9th Cir. 2009).

The Court generally "may not consider any material beyond the pleadings" in ruling on a motion to dismiss.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2002).  However, where documents are not physically attached to the complaint, they may be considered if the documents' "authenticity…is not contested" and "the plaintiff's complaint necessarily relies" on them.  *Brach v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (quoting *Parrino v. FHP, Inc.*, 146

F.3d 699, 705-06 (9th Cir. 1998)).  In consideration of this motion, the Court has considered some of the documents filed by Plaintiffs in state court in support of their motion for a temporary restraining order.  Dkt. 3-2.  The fact that these documents were relied upon by Plaintiffs in state court shows their belief in the authenticity of the documents.  Furthermore, Plaintiffs' amended complaint makes repeated references to and necessarily relies on several of the documents filed in state court as the factual basis for the claims in this case.  *See* Dkt. 3-2, at 55-57, 59, 60, and 62.

A.  TILA Rescission Claim

Plaintiffs claim they are entitled to seek rescission of their mortgage because they did not receive "proper or adequate notice of their right to rescind that was to be provided by defendants (or their assignors) or delivery of all material disclosures."  Dkt. 3-2, at 58.

In their motion to dismiss, AHMSI contends that Plaintiffs' rescission claim should be dismissed because Plaintiffs' do not allege "their ability to return the loan proceeds they received and from which they benefited at the time the refinance loan was consummated."  Dkt. 11, at 5. Without alleging this ability to return the loan proceeds, according to AHMSI, Plaintiffs have failed to plead an "essential element" of a rescission claim under TILA.  Dkt. 11, at 6.  Plaintiffs respond by arguing that the requirement to plead the present ability to tender the loan proceeds is within the court's discretion.  Dkt. 13, at 13.  Plaintiffs also contend that if such a showing is required, Plaintiffs should be afforded discovery "of the various loan documents to determine the remaining obligation due" and an opportunity to submit evidence of their ability to repay the remaining obligation.  *Id.*

The question is whether Plaintiffs' rescission claim should be dismissed at the pleading stage when the complaint does not contain facts regarding the ability of Plaintiffs to repay the

loan proceeds.  Although the Ninth Circuit has not addressed this issue directly, it has held that a court may require a borrower seeking rescission of a mortgage transaction under TILA to demonstrate the ability to tender the loan proceeds. *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1168 (9th Cir. 2003) (holding that it is within a district court's "discretion to condition rescission on tender by the borrower of the property he had received from the lender.") (internal quotation marks and citation omitted).

District courts within the circuit have adopted varying interpretations of *Yamamoto*.  A number of them have extended *Yamamoto* to hold that a claim for rescission under TILA is subject to dismissal at the pleading stage if the borrower fails to allege a present ability to tender the loan proceeds.  *See, e.g., Del Valle v. Mortg. Bank of Cal.*, 2009 WL 3786061, at *8 (E.D.Cal. Nov.10, 2009); *ING Bank v. Korn*, 2009 WL 1455488, at *1 (W.D.Wash., May 22, 2009); *Garza v. American Home Mortg.*, 2009 WL 188604, at *5 (E.D.Cal. Jan.27, 2009) (granting motion to dismiss TILA rescission claim in light of complaint's failure to allege ability to tender, since "[r]escission is an empty remedy without [plaintiff]'s ability to pay back what she has received").

Others courts have held, however, that failure to plead ability to tender affirmatively is not fatal to a TILA rescission claim. *See, e.g., Singh v. Wash. Mut. Bank*, 2009 WL 2588885, at *4 (N.D.Cal. Aug.19, 2009) ("Notably, *Yamamoto* does not hold that a claim for rescission cannot survive a motion to dismiss until the right to rescind is adjudicated in the plaintiff's favor."); *ING Bank v. Ahn*, 2009 WL 2083965, at *2 (N.D.Cal. July 13, 2009) (noting that "*Yamamoto* did not hold that a district court must, as a matter of law, dismiss a case if the ability to tender is not pleaded.  Rather, all of these cases indicate that it is within the trial court's discretion to choose to dismiss where the court concludes that the party seeking rescission is

incapable of performance."); *Pelayo v. Home Capital Funding*, 2009 WL 1459419, at *7 (S.D.Cal. May 22, 2009) (rejecting argument that, under *Yamamoto*, claim for rescission was subject to dismissal where plaintiff "failed to offer tender in the complaint of the funds she borrowed").

The latter cases are persuasive because they appear to be more consistent with the liberal pleading standard of Fed.R.Civ.P. 8.  At the same time, however, the Court agrees with the reasoning of the first line of cases that "it was not the intent of Congress to reduce the mortgage company to an unsecured creditor," *Del Valle*, 2009 WL 3786061 at * 8, and that "[r]escission is an empty remedy without [plaintiff]'s ability to pay back what she has received," *Garza*, 2009 WL 188604 at *5.

The Court will exercise the discretion conferred upon it by *Yamamoto*.  Accordingly, Plaintiffs' TILA rescission claim should be dismissed with leave to amend, affording Plaintiffs the opportunity to allege either the present ability to tender the loan proceeds or the expectation that they will be able to tender within a reasonable time.  At the end of the day, Plaintiffs "will not be entitled to rescission" unless they can tender the principal balance of the loan.  *See Clemens v. J .P. Morgan Chase Nat. Corporate Services, Inc*., No. 09-3365 EMC, 2009 WL 4507742 (N.D.Cal. Dec.1, 2009).  It makes little sense to let Plaintiffs' rescission claim proceed absent some indication that the claim will not simply be dismissed at the summary judgment stage after needless depletion of the parties' and the Court's resources.

B.  TILA Monetary Damages Claim

Plaintiffs claim they are entitled to monetary damages on account of Defendants' alleged TILA violations, "including but not limited to improper or inadequate notices to the Plaintiffs with respect to the terms and conditions of the loan…"  Dkt. 3-2, at 59.  Plaintiffs allege several

facts that they argue support their claim for damages under TILA: (1) that Plaintiffs desired a fixed rate loan with no prepayment penalty but received a "Negative Amortization Adjustable Rate mortgage" that has a pre-payment penalty (Dkt. 3-2, at 55); (2) that Plaintiffs did not receive the proper disclosures as required by TILA (*Id.*); and (3) that the loan application submitted by Defendant Apex Mortgage for approval was falsified and not the same loan application that Plaintiffs signed on November 6, 2006.  (Dkt. 3-2, at 56).

In its motion to dismiss, AHMSI contends that any claim for damages under TILA is time-barred because Plaintiffs' claim was brought outside the one-year limitations period set forth in 15 U.S.C. § 1640(e).  Dkt. 11, at 6-7.  In response, Plaintiffs argue that the doctrine of equitable tolling should suspend the TILA statute of limitations because they had "no reasonable opportunity to discover Defendants' failure to make required disclosures" as a result of the Defendants' alleged misrepresentations.  Dkt. 13, at 11.  Plaintiffs argue they were unable to discover these alleged misrepresentations until the initiation of Defendants' foreclosure action due to "their lack of knowledge and sophistication of banking procedures."  *Id.*  AHMSI replies that the allegations in the amended complaint "make clear that Plaintiffs had all the facts necessary to determine whether a TILA…violation occurred at or near the time of loan consummation."  Dkt. 14, at 6.

"Where equitable tolling may be applicable to a federal claim, the 'claim accrues ... upon awareness of the actual injury, not upon awareness that this injury constitutes a legal wrong.'" *Lukovsky v. San Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008)).  Equitable tolling "suspend[s] the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the... action." *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986).  Equitable tolling "applies in situations…'where the complainant has been

ORDER ON MOTION TO DISMISS - 9

induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'"

*Velazquez v. GMAC Mortg. Corp.*, 605 F.Supp.2d 1049, 1061 (C.D.Cal. 2008) (quoting

*O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2008)).

   Plaintiffs' complaint fails to support their assertion that the TILA limitations period should be tolled.  First, documents in the record filed in support of Plaintiffs' motion for a temporary restraining order (TRO) show that Plaintiffs signed a mortgage application indicating that they sought an adjustable rate mortgage.  Mr. McGinley signed a Uniform Residential Loan Application on November 6, 2006.  Dkt. 3-2, at 20.  On this same form, in a section labeled "Amortization Type," a box labeled "ARM (type): Pay Option" is checked.  *Id.*  Even if Plaintiffs did not realize that this selection indicated their desire to apply for a mortgage with an adjustable interest rate, the non-selection of nearby box labeled "Fixed Rate" contradicts their assertion that they represented to the mortgage broker that they desired a loan with a fixed rate. *Id*.

   Second, Mr. McGinley signed a truth in lending disclosure statement on November 6, 2006, which was filed in support of the motion for a TRO.  Dkt. 3-2 at 17.  The box indicating that Plaintiffs would not be required to pay a prepayment penalty is unchecked.  *Id.*  Whether Plaintiffs' loan may have contained a pre-payment penalty (contrary to their alleged desires) could have been determined at or near the time Mr. McGinley signed this document.

   Third, documents filed by Plaintiffs in support of their TRO show that both Plaintiffs acknowledged on November 21, 2006 the receipt of two copies of the notice of the right to cancel. Dkt. 3-2, at 34.  Fourth, Plaintiffs have pled no facts showing when they became aware of the alleged second falsified loan application that apparently inflated Plaintiffs' income.

Plaintiffs' complaint is silent as to why they could not have discovered this second loan application inside the limitations period.

Accordingly, Plaintiffs have not pled facts to support an assertion that the statute of limitations should be tolled. Plaintiffs had the "reasonable opportunity to discover the fraud or nondisclosures that form the basis" of their TILA claims for damages at or near the time of loan consummation. *King*, 784 F.2d at 915. Therefore, Plaintiffs claim for damages under TILA should be dismissed.

C. RESPA Claim

Plaintiffs claim that Defendants violated RESPA by not properly disclosing to Plaintiffs "the specific amount of the Yield Spread Premium to be paid to the broker." Dkt. 3-2, at 59. Plaintiffs allege in their amended complaint that the Good Faith Estimate (GFE) provided by the broker and lender "did not disclose the Yield Spread Premium payable to the broker outside of closing, which was charged to the Plaintiff and disclosed only at closing on the Final HUD-1 Settlement Statement." Dkt. 3-2, at 56.

Defendants seek to dismiss this claim by arguing that Plaintiffs' RESPA claim is time-barred. Dkt. 11, at 9. Plaintiffs counter by arguing that equitable tolling should apply to the RESPA statute of limitations because Plaintiffs only discovered the alleged RESPA violations ("that the YSP was discretely hidden in the interest rate") following Defendants' initiation of the foreclosure action. Dkt. 13, at 11-12.

Under RESPA, the statute of limitations for private plaintiffs claiming alleged violations under 12 U.S.C. §§ 2607 or 2608 is one year. 12 U.S.C. § 2614. Here, it is undisputed that the loan in question closed in November 2006 and that the instant lawsuit was filed in October 2009. Thus, unless Plaintiffs' RESPA claims are subject to equitable tolling, they will be time-barred.

ORDER ON MOTION TO DISMISS - 11

The doctrine of equitable tolling "focuses on excusable delay by the plaintiff," *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002), and inquires whether "a reasonable plaintiff would ... have known of the existence of a possible claim within the limitations period." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).

The Ninth Circuit has not decided whether the doctrine of equitable tolling may, in appropriate circumstances, suspend the limitations period of a RESPA claim.  However, absent a clear indication to the contrary, equitable tolling should be read into every federal statute.  *See Holmberg v. Armbrecht*, 327 U.S. 392, 396-97 (1946); *see also Lawyers Title Ins. Corporation v. Dearborn Title Corp.*, 118 F.3d 1157, 1166-67 (7th Cir.1997) (holding that RESPA actions are subject to equitable tolling because only in the rarest circumstances are limitations statutes considered jurisdictional) (citing *King*, 784 F.2d at 914-15); *but see Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040-41 (D.C.Cir.1986) (holding that RESPA actions are not subject to equitable tolling because the statute of limitation, found in the same section that confers jurisdiction on the federal courts, is jurisdictional).

Additionally, determining whether the doctrine of equitable tolling should apply to RESPA claims is aided with a comparison of the RESPA statute of limitations, 12 U.S.C. § 2614, and the TILA statute of limitations, 15 U.S.C. § 1640(e).  The Ninth Circuit has held that despite its jurisdictional tone, TILA violations are subject to equitable tolling because "an inflexible rule that bars suit one year after consummation is inconsistent with legislative intent." *King*, 784 F.2d at 914.  In light of *King*'s interpretation of a nearly identical statute, it appears that "equitable tolling may, in appropriate circumstances, suspend the limitations period until the borrower discovers or has reasonable opportunity to discover the fraud or nondisclosures" that

form the basis of a plaintiff's RESPA action.  *Id.* at 915; *see also Blaylock v. First American Title Ins. Co.*, 504 F.Supp.2d 1091, 1108 (W.D.Wash., 2007).

Here, Plaintiffs claim that the alleged YSP "payable to the broker outside of closing" was not included in the Good Faith Estimate (GFE) provided to Plaintiffs but "was charged to [Plaintiffs] and disclosed only at closing on the Final HUD-1 Settlement Statement."  Dkt. 3-2, at 56.  These claims are supported by an absence of a line indicating a YSP on the Good Faith Estimate allegedly signed by Mr. McGinley on November 9, 2006 (Dkt. 3-2, at 27) and by the inclusion of a line entitled "Yield Spread Premium to APEX MORTGAGE SERVICES" in the "Settlement Charges" column of the HUD-1 Settlement Statement (Dkt. 3-2, at 29).  What is missing, however, is a number or percentage adjacent to the YSP line indicating the amount of any alleged YSP.  *Id.*  This non-disclosure and the subsequent effects of applying the alleged YSP form the basis of Plaintiffs' RESPA claim.

Whether or not this alleged non-disclosure is a violation of RESPA is not currently the issue.  What is at issue, however, is whether Plaintiffs were able to discover or had a reasonable opportunity to discover the non-disclosure that they allege occurred.  Plaintiffs' complaint makes clear that Plaintiffs had the reasonable opportunity to compare the GFE to the HUD-1 at or near the time of closing in order to determine (1) if a YSP was disclosed prior to the receipt of the HUD-1 and (2) if an amount of the alleged YSP was included on the HUD-1.  Plaintiffs have pled no other facts related to a RESPA claim that they allege were not discoverable at the time of the loan consummation.

While equitable tolling may apply in some circumstances to suspend the RESPA statute of limitation, there is nothing in Plaintiffs' complaint to suggest that application of this doctrine is presently appropriate, particularly when the filing of this late claim is due to the Plaintiffs'

ORDER ON MOTION TO DISMISS - 13

"failure to exercise due diligence in preserving [their] legal rights." *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998) (quoting *Scholar v. Pacific Bell*, 963 F.2d 264, 267-68 (9th Cir.1992)).

Accordingly, because Plaintiffs have not pled sufficient factual matter to state a claim to relief that is plausible on its face, Plaintiffs' RESPA claim should be dismissed.

D.  Claims under Washington's Consumer Protection Act

Plaintiffs claim that Defendants committed numerous unfair practices and are therefore entitled to relief under the Washington Consumer Protection Act ("CPA") (RCW 19.86 *et seq*). Dkt. 3-2, at 60-61.  The factual basis of Plaintiffs' CPA claim is identical to that supporting Plaintiffs' TILA and RESPA claims.  *Id*.  Additionally, Plaintiffs claim that various violations of TILA and RESPA form the basis of a CPA violation.  *Id.*

AHMSI requests that this claim be dismissed because (1) AHMSI had no connection with the loan until sometime after it was originated and (2) "assignee liability" does not apply to claims asserted under the Consumer Protection Act.  Dkt. 11, at 9-10; Dkt. 14, at 11-12. Plaintiffs respond by arguing that AHMSI "stepped into the shoes" of the lender and assumed the rights and liabilities associated with the origination of the loan upon assignment of the loan to AHMSI.  Dkt. 13, at 15-16.

Washington's Consumer Protection Act creates a private cause of action.  "Any person who is injured in his or her business or property by a violation of RCW 19.86.020  ('unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce')…may bring a civil action."  RCW 19.86.090.  The elements of a private CPA violation are (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) and causes injury to the plaintiff in his or her business or

property; and (5) such injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 780 (1986).

Under TILA, an assignee is liable for certain acts or omissions of the original creditor. *See* 15 U.S.C. § 1641(e) (stating that an assignee may be liable for violations that appear on the face of the loan documents).  That does not mean that an assignee liable under TILA is automatically liable under the CPA.  When a plaintiff claims the defendant violated both the TILA and the CPA, violations of the TILA may evidence the CPA element of an unfair or deceptive act or practice.  *See, for example, Anderson v. Wells Fargo Home, Mort*., 259 F.Supp.2d 1143, 1147-48 (W.D.Wash.2003).

Plaintiffs, however, have provided no authority for the proposition that an assignee is liable under the CPA for possible violations committed by the loan originator and not the assignee.  *See* Dkt. 13.  In *Schmidt v. Cornerstone Investments, Inc*., 115 Wn.2d 148, 165 (1990), the Washington Supreme Court upheld the dismissal of the plaintiffs' CPA claims against an attorney/escrow agent because plaintiffs failed to provide sufficient evidence that *he was involved* in the marketing or soliciting of plaintiffs.  *Id*. (emphasis added).  Likewise, in this case, Plaintiffs have failed to allege that AHMSI was involved in the marketing or solicitation of Plaintiffs for the original loan transaction with Defendant broker Apex or Defendant lender American Broker Conduit.  In fact, Plaintiffs allege in their complaint that AHMSI became involved in the loan only sometime after the loan was closed.  Dkt. 3-2, at 54.  Therefore, Plaintiffs have failed to state a claim for relief against AHSMI that is plausible on its face.  Accordingly, the Court should dismiss Plaintiffs' CPA claims against AHMSI.

E. <u>Washington Common Law Claims</u>

ORDER ON MOTION TO DISMISS - 15

Plaintiffs assert several claims under Washington common law, including (1) breach of fiduciary duty, (2) fraud, (3) intentional infliction of emotional distress, and (4) unjust enrichment.  Dkt. 3-2, at 61-62.  AHMSI seeks dismissal of these claims.  Dkt. 11.

*Breach of fiduciary duty*.  Although Plaintiffs' complaint does not specifically name AHMSI as breaching a fiduciary duty that it owed to Plaintiffs, it does allege that "Defendant Lender's actions…[were] a breach of Defendant Lender's fiduciary duty to Plaintiffs."  Dkt. 3-2, at 61.  Plaintiffs define "Defendant Lender" in their complaint as including AHMSI.  Dkt. 3-2, at 52.

Breach of a fiduciary duty imposes liability in tort.  *Tedvest Agrinomics VI v. Tedman Properties V*, 49 Wn.App. 605, 607 (1987).  In order to prevail, Plaintiffs "must establish: (1) the existence of a duty [owed to them]; (2) a breach of that duty; (3) a resulting injury; and (4) that the claimed breach was the proximate cause of the injury."  *Hansen v. Friend*, 118 Wn.2d 476, 479 (1992).  Whether a legal duty exists is a question of law.  *Id.*

"The general rule in Washington is that a lender is not a fiduciary of its borrower; a special relationship must develop between a lender and a borrower before a fiduciary duty exists."  *Miller v. U.S. Bank of Washington, N.A.*, 72 Wn.App. 416, 426 (1994) (citations omitted).  "A quasi-fiduciary relationship may exist[, however,] where the lender has superior knowledge and information, the borrower lacks such knowledge or business experience, the borrower relies on the lender's advice, and the lender knew the borrower was relying on the advice."  *Id*. at 427.

Neither party has addressed the possibility that a quasi-fiduciary relationship exists between AHMSI and Plaintiffs.  Nevertheless, because the complaint does not allege, and the record does not contain any evidence, that plaintiff received and relied on advice or information

from AHMSI when Plaintiffs entered into the mortgage at issue, Plaintiffs have not alleged sufficient facts to establish that a fiduciary or quasi-fiduciary duty exists.  This claim should be dismissed.

*Fraud.*  Plaintiffs claim that the actions of "Defendant Lender" constituted fraud.  Dkt. 3-2, at 62.  AHMSI argues that there are no allegations against it to support the claim.  Dkt. 11, at 11.

Under Washington law, a claim for fraud has the following nine elements: "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff."  *Stiley v. Block*, 130 Wn.2d 486 (1996).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must plead allegations of fraud with particularity.  Fed.R.Civ.P. 9(b).  The complaint must include "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  Moreover, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id*. at 764-65 (internal quotation and edits omitted).  Thus, where, as here, a fraud suit involves multiple defendants, "a plaintiff must, at a minimum, identify the role

of each defendant in the alleged fraudulent scheme."  *Id.* at 765 (internal quotation and edits omitted).

Here, Plaintiffs have not pled their allegations of fraud with the particularity necessary to satisfy Rule 9(b).  Plaintiffs lumped together AHMSI and Defendant American Broker Conduit when it defined AHMSI as part of "Defendant Lender."  Dkt. 3-2, at 52.  Plaintiffs' fraud claim does not identify any specifics as to AHMSI in particular, contrary to the requirements of Rule 9(b).  However, the Court does note that Plaintiffs originally filed this complaint in state court.  Dkt. 3-2, at 51.  Accordingly, this claim should be dismissed without prejudice and with leave to amend.

*Intentional Infliction of Emotional Distress*.  In their complaint, Plaintiffs allege a claim for intentional infliction of emotional distress, also known as outrage.  Dkt. 3-2, at 62.  Plaintiffs do not establish the specific contours of this claim, although it is clear that the claim rests generally on alleged non-disclosures associated with the refinance, the terms of the loan, and the subsequent non-judicial foreclosure proceedings.  *Id.*

"The tort of outrage requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress."  *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003).  "The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Dicomes v. State*, 113 Wn.2d 612, 630 (1989); *see Robel v. Roundup Corp.*, 148 Wn.2d 35 (2002). "The first element requires proof that the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Robel*, 148 Wn.2d at 51 (quoting *Dicomes*, 113 Wn.2d at 630).

Here, Plaintiffs have not pled factual allegations regarding whether AHMSI's conduct was so extreme as to satisfy the first element of their claim, nor have they pled that any conduct actually caused them severe emotional distress.  *Cf. Vawter v. Quality Loan Service Corp. of Washington*, 707 F.Supp.2d 1115, 1128 (W.D.Wash. 2010); *Bell v. Fed. Deposit Ins. Corp.*, 2010 WL 113995, at *2 (W.D.Wash. Jan. 7, 2010).  Even if AHMSI "stepped in to the shoes" of the originators of the loan, the originators' alleged conduct, while arguably problematic or troubling, does not involve physical threats, emotional abuse, or other personal indignities aimed at Plaintiffs.  Therefore, because Plaintiffs have failed to plead sufficient facts, the Court should dismiss this claim.

Additionally, any opportunity to amend this claim would be futile.  Even if Plaintiffs could plead additional facts, they would be unable to overcome an application of the economic loss rule, which bars recovery for alleged breach of tort duties "where a contractual relationship exists and the losses are economic in nature."  *Alejandre v. Bull*, 159 Wn.2d 674, 683 (2007).  Courts have applied the economic loss rule to bar outrage claims arising in circumstances similar to this case.  *Pfau v. Washington Mut., Inc*, 2009 WL 484448, at *12 (E.D.Wash. Feb. 24, 2009); *Vawter*, 707 F.Supp.2d at 1129.

*Unjust Enrichment*.  Plaintiffs' claim that "Defendant Lender" was unjustly enriched when Plaintiffs paid "Defendant Lender" an interest rate "higher than they should have paid" as a result of an allegedly "hidden" yield spread premium.  Dkt. 3-2, at 62.  AHMSI requests that any claim of unjust enrichment against it be dismissed.  Dkt. 11, at 12.

ORDER ON MOTION TO DISMISS - 19

1   Under Washington law, unjust enrichment is composed of three elements: "(1) the

2   defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the

3   circumstances make it unjust for the defendant to retain the benefit without payment." *Young v.*

4   *Young*, 164 Wn.2d 477, 484-485 (2008).

5   Here, Plaintiffs have alleged sufficient facts for a claim of unjust enrichment.  Plaintiffs

6   allege that AMHSI, jointly or severally with Defendant American Broker Conduit, received a

7   benefit at the expense of Plaintiffs when Plaintiffs were charged a non-specified yield spread

8   premium.  The fairness of the retention of this benefit cannot be determined without further

9   development of the record.  Accordingly, dismissal of Plaintiffs' unjust enrichment claim is not

10  appropriate at this time.

11  Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss (Dkt. 11) is

12  **GRANTED IN PART AND DENIED IN PART** as follows:

13  (1) Plaintiffs' claims for damages under TILA and RESPA are **DISMISSED**;

14  (2) Plaintiffs' claims under the Washington Consumer Protection Act and the

15      Washington common law claims of a breach of fiduciary duty and intentional

16      infliction of emotional distress are **DISMISSED**;

17  (3) Plaintiffs are afforded the opportunity to **AMEND** their complaint, if they so choose,

18      not later than October 29, 2010, to include facts regarding the following: (1) subject

19      to Fed.R.Civ.P. 11(b) requirements, their ability to tender the proceeds of the loan in

20      support of their claim for rescission under TILA; and (2) per Fed.R.Civ.P. 9(b), the

21      particular circumstances of their fraud claim against AHMSI;

22  (4) Plaintiffs' claim of unjust enrichment may proceed.

ORDER ON MOTION TO DISMISS - 20

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 15th day of October, 2010.

ROBERT J. BRYAN
United States District Judge